OPINION OF THE COURT
Emily Jane Goodman, J.
In this CPLR article 78 proceeding, petitioners Gregory Hicks, Yolanda Flood-Hawkins, and Jerome McCall challenge their termination by the New York City Police Department (NYPD). Petitioners were terminated when specimens of their pubic hair, head hair and/or armpit hair tested positive for illegal drug use pursuant to a "Dole test”, also known as a hair *995 drug analysis. The petitions allege that the NYPD used the Dole test even though these tests have been disavowed by the Federal Government as being unreliable and inappropriate as a drug test and there are no scientific protocols governing the administration of this new test. Further, petitioners allege that the NYPD denied to them copies of the results of the laboratory tests and other information requested pursuant to a Freedom of Information Act request (FOIA request) which are essential to a fair constitutional hearing.
Respondents cross-move to dismiss the petition on the grounds that the action is time barred and also barred by the doctrines of res judicata and collateral estoppel.
STATUTE OF LIMITATIONS ISSUE
Petitioners were discharged from employment in March 1996. They were not entitled to an administrative hearing as they were probationary employees. Petitioners then commenced an article 78 proceeding (the first proceeding) within four months of their discharge and filed proof of service with the Motion Support office of New York County Court at 60 Centre Street on July 12, 1996. The NYPD moved to dismiss that petition on grounds that petitioners had failed to file proof of service in compliance with CPLR 306-b (a). The proof of service was filed with the Motion Support office instead of the County Clerk. Justice McCooe, in a decision dated October 18, 1996, dismissed the petition because the statute "directs service on the Clerk of the Court which is distinct from the Motion Support Office.”
After Justice McCooe’s decision, in a decision dated March 27, 1997, the Court of Appeals held that not all "threshold filing defect[s]” warrant a dismissal of a special proceeding. (Matter of Fry v Village of Tarrytown, 89 NY2d 714, 716.) In Fry, also an article 78 proceeding, the petitioner paid the requisite filing fee but failed to file with the Clerk of the Court an original or conformed copy of the executed order to show cause which brought on the proceeding. The filing did not satisfy the requirements of CPLR 304 which states: "A special proceeding is commenced by filing a notice of petition or order to show cause and a petition with the clerk of the court in the county in which the special proceeding is brought * * * For purposes of this section, and for purposes of section two hundred three of this chapter, filing shall mean the delivery of the summons with notice or summons and complaint to the clerk together with any fee required as specified in rule twenty-one hundred *996 two of this chapter for filing.” The Court determined that the petitioner’s failure to file the original papers with the Clerk of the Court "rendered the proceeding subject to dismissal [emphasis added].” (Supra, at 717.) However, the Court did not dismiss the petition because the petitioner had paid the requisite filing fee. As the defect in filing related only to the sufficiency of the filed papers, not to "the court’s principal interest in the filing system [i.e., revenue] [citations omitted]” (at 719), the defect was waivable. "Insofar as the sufficiency of the papers filed at commencement is linked to * * * waivable matters of primary concern to the parties * * * defects in filing should be waivable” (at 720).
Thus, under Fry (supra), a defect in filing will result in automatic dismissal only if "the court’s principal interest in the filing system” (at 719), i.e., payment of fees, is lacking and if there is a reason to waive the defect. At the time that Justice McCooe rendered his decision in this case, the Court had not held that filing defects under the new filing system are waivable.
In this case, petitioners paid the required fees and the Motion Support office instead of in the County Clerk’s office. However, a copy of the petition was filed in the County Clerk’s office and the filing fees were paid in the County Clerk’s office, which issued the index number and assigned the Judge to the case. (The County Clerk will not issue an index number unless a copy of the petition and notice of petition are filed in the County Clerk’s office.) Under the system at 60 Centre Street, after filing the copy of the petition and notice of petition in the County Clerk’s office, and paying the fees there, petitioner’s process server proceeded to the Motion Support office. The process server alleges that she was informed by the Motion Support Clerk that the affidavit of service was required to be filed with the notice of petition in the Motion Support office. (Affidavit of Nicole Hicks, Dec. 10, 1996.) Ms. Hicks then filed two affidavits of service, in Motion Support. Her mistake was that she should have filed one of the affidavits in the County Clerk’s office.
The court has the power to deny dismissal of an article 78 petition when such a dismissal "shocks our sense of fairness”. (Matter of Turner v Franco, — AD2d —, —, 1997 NY Slip Op 02823 [1st Dept, Mar. 27, 1997].) A dismissal in this case, based upon a technical failure which does not implicate the primary concern of the fee-generating statute, would be patently unfair.
The notice of petition and petition were delivered to the County Clerk and the required fee was paid. Although *997 petitioner did not comply with the technical filing requirements of CPLR 306-b (a) with regard to the affidavit of service, the special proceeding was properly commenced and, therefore, under Fry (supra), and in the interest of justice, the defect of filing the affidavit of service in the wrong office should be waived.
THE MERITS OF PETITIONERS’ CLAIM
The petition alleges as follows: Petitioners were denied due process in that after submitting to (the hair drug) analysis,
a. each was denied copies of the results of purported hair drug analysis;
b. none was served with any charges and specifications;
c. there was no hearing or other administrative hearing;
d. each was denied an opportunity to challenge the test results;
e. petitioners were denied an opportunity to defend against the erroneous results of the irregular hair specimen analysis;
f. petitioners were not probationary officers at the time of discharge each having completed the probationary period on February 27, 1996 entitling them to a hearing;
g. petitioners’ requests for the remaining hair specimens for their own testing were ignored;
h. the hair samples were improperly removed from their persons;
i. the hair samples were improperly gathered;
j. the hair samples were improperly packaged, labeled, and transported;
k. chain of custody was breached;
l. there are no recognized or approved protocols or procedure that set forth a single standard of gathering or testing hair; and
m. there is no scientific review, test, and procedure in effect.
The petition further alleges that each petitioner submitted to the NYPD a duly signed and witnessed release and request for a copy of the test results and a copy of each petitioners’ probationary records and that these requests were ignored. The petition further alleges that, upon information and belief, this is the first occasion in which the NYPD relied upon a hair drug analysis rather than a urine analysis to determine the use of an alleged controlled substance. Each petition details the manner in which the hair specimens were obtained. For *998 example, petitioner Hicks states that the person who obtained Hicks’ hair specimen identified himself to Hicks as a detective who stated that he had learned how to extract hair follicles one week before the test on Hicks, and that the detective clipped less than one centimeter from the hair on Hicks’ head with the same pair of scissors that was used on the approximately 50 other individuals who had preceded Hicks in obtaining the examination. Hicks further states that his hair sample was not removed from the root and that neither the hair root end nor the cut end was labeled or identified. Petitioner McCall states that the individual who removed hairs from his armpit and pubic area was not wearing surgical gloves and placed both hair samples together into a tin foil wrapper without labeling either end of the sample. McCall alleges that his test was retaken and on the second occasion hair samples from his head and pubic area were cut with a pair of scissors removed from a drawer, without first being cleaned, and the ends of the samples again were not labeled. Petitioner Flood-Hawkins states that 48 hours prior to the hair drug analysis she received a "perm” and other chemical hair treatment at a beauty parlor and that numerous chemical products were placed in her hair. She also states that one month prior to the hair drug analysis she gave birth to a baby boy who tested negative for any controlled substance. Flood-Hawkins states that the same scissors, without being cleaned, were used on the approximately 30 officers who appeared with her for the test and that neither the hair root end nor the cut end of the hair was labeled.
In support of the petitions, the affidavit of Dr. David L. Black, an expert in forensic toxicology, states that elements of a proper sample correction include absolute identification of the subject through document identification (photo identification usually), sterile and previously unused containers or correction devices, collection of only one subject at a time, trained collectors, and numerous other components that apparently were not used to test the petitioners. Dr. Black further states that the use of hair as a specimen for employee drug testing is premature since it cannot be supported by the current scientific understanding and information and in the absence of adopted procedures. Dr. Black states that "there are no general accepted comparative data from multiple laboratories that provides information concerning the accuracy, precision, specificity, sensitivity and appropriate test thresholds to define a negative or positive test.”
*999 Respondent has neither answered the petition nor submitted any evidence refuting Dr. Black’s affidavit. Instead, respondent cross-moved to dismiss the petition based on the alleged filing defect, and reserved its right pursuant to CPLR 7804 (f) to serve and file a verified answer to the petition. CPLR 7804 (f) authorizes the court to permit the respondent to answer the petition upon denial of a motion to dismiss within five days after service of the order with notice of entry. Respondent requests 20 days from the date of service of the order with notice of entry in which to serve their verified answer. CPLR 7804 (f) authorizes the court to permit the respondent to answer upon such terms as may be just, beyond the allotted five days.
Accordingly, it is hereby ordered that the cross motion to dismiss the petition is denied. Respondent shall serve and file a verified answer to the petition within 20 days from the date of service of this order with notice of entry.